# SUPREME COURT OF TENNESSEE,

8L    1
10L 113

FOR THE

# EASTERN DIVISION,

KNOXVILLE, ....... SEPTEMBER TERM, 1881.

---

### JOHN BAXTER v. W. P. WASHBURN et al.

1. CORPORATION. *Sale of land. Purchase money. Bonds.* The complainant sold land to certain persons, who obtained a charter of incorporation for mining purposes, and transferred the land to the corporation; about a year afterwards a new contract was entered into by complainant, the purchasers, and the corporation, by which the complainant conveyed the land to the corporation absolutely, reciting the payment of the consideration, but retained the purchase notes of the individual purchasers, and the company conveyed the land in trust to secure its bonds for double the amount of the purchase money, and deposited those bonds with the complainant to be sold, and a sufficiency of the proceeds applied to the satisfaction of the purchase notes. *Held*, that the company was in reality the principal debtor for the land, and the pledge of its bonds binding on it.

2. SAME. *Bonds. Bona fide holder. Assignment.* The trust assignment of the corporation to secure its bonds stated it to be the intention of the company to put the bonds on the market and sell them, and provided for the equal payment of all of these bonds to any *bona fide* holder, but the bonds could not be sold except a small number. *Held*, that the complainant was a *bona fide* holder of the bonds pledged which could not be sold, and entitled to share *pro rata* in the trust assets.

1—VOL. 8.

Baxter *v.* Washburn.

3. INJUNCTION BOND. *Surety. Not liable, when.* The trustee sold the trust
property for the benefit of the bondholders, and complainant became
the purchaser, executing his notes on time for the purchase money.
About the time the first of his notes fell due he filed this bill, on be-
half of himself and all other bondholders and beneficiaries, to enjoin
the collection of his notes, to obtain a credit thereon for his propor-
tion of the trust assets on the bonds held by him, and for the share of
certain other bonds attached, and for a settlement of the trust. The
complainant obtained a fiat for an injunction, restraining the trustee
from taking any steps to collect complainant's notes except in this
cause, unless authorized by order of the court, upon giving bond with
security in the sum of five thousand dollars as required by law. He
gave bond with security in the prescribed penalty, conditioned to
prosecute the bill of injunction with effect, or in case he should fail
therein, or the same be dismissed, to abide by, perform and fulfill the
judgment or decree of the court, and pay all costs and damages that
may be sustained for wrongfully suing out the injunction. No in-
junction was in fact issued, and the complainant was declared enti-
tled to the credits, and a decree rendered against him for the residue
of his purchase notes. He became insolvent between the suing out
of the injunction and the final hearing of the cause. *Held,* upon mo-
tion for judgment against the surety on the injunction bond, that the
surety was not liable. COOPER, J., dissenting.

FROM KNOX.

Appeal from the Chancery Court at Knoxville.    W.
B. STALEY, Ch.

W. M. BAXTER for complainant.

A. S. PROSSER for defendants.

The court adopted the opinion of Chancellor Staley
as the opinion of the court upon the point embodied
in the last syllabus above.    It is as follows:

Complainant in this cause filed his bill in October,
1873, and therein prayed for an injunction to restrain
Washburn, trustee, from collecting, except in this court,

Baxter *v.* Washburn.

·certain notes executed by complainant to Washburn, trustee, for land sold by the latter to complainant. A fiat was obtained for an injunction to issue, on bond being given with security in the penalty of five thousand dollars.    On the 21st of October, 1873, a bond was executed in the penalty named by complainant as principal and Bailey and Thornburgh as sureties.    The condition of the bond is as follows:

"Now, if said John Baxter shall prosecute said bill of injunction with effect, or in case he should fail therein, or the same be dismissed, shall abide by perform and fulfill the judgment or decree of said court, and pay all costs and damages that may be sustained from wrongfully suing out said injunction, then the above obligation to be void, otherwise to remain in full force and effect."

No injunction was, in fact, ever issued.    The defendants answered; the cause came to a hearing in April, 1879, when the bill was sustained; the relief prayed for was granted; complainant obtained certain credits on his notes, and judgment was rendered against him for the remainder thereof.    This judgment has not been collected, and the cause is now before me on an application for judgment against the sureties on the injunction bond.

When a bill is brought to enjoin a judgment at law, the condition of the injunction bond is to pay the judgment, interest and costs, or to perform the decree of the court, in case the injunction be dissolved, and also to pay such damages as may be sustained by the wrongful suing out of the injunction.

When, before judgment, the investigation of the question involved has been drawn by injunction into a court of chancery upon the ground of concurrent jurisdiction in that court, the condition of the bond shall be to pay costs and damages awarded by the bill. In the absence of statutory provision prescribing the penalty and conditions of the bond, it is within the competency of the judge to order, and the clerk to take a bond with such conditions of liability as the judge may deem proper. And when the conditions of a bond are broader than provided by law or the order of the judge, the surety will not be liable beyond the order or the requirements of the law.

The order of the judge in this case prescribes the penalty of the bond, but no conditions. The complainant did not by his bill seek to enjoin a judgment; and if there be any statutory provision applicable to the case it must be sub-sec. 2 of sec. 4439 of the Code, which has been referred to, and which provides that the condition of the bond shall be to pay the costs and damages awarded on dismissing the bill. It follows, therefore, that as there was no order of the judge prescribing the conditions of the bond in this case, and as there is no statutory provision requiring, in such a case as this, the condition to abide by and perform the judgment of the court, that condition is of no force. A condition inserted in a bond by a clerk, not authorized by law or the order of the judge, is not binding on the sureties.

But again, as we have seen, no injunction was ever issued in this cause, and consequently the condi-

tion of the bond, to pay all such costs and damages as may be sustained from wrongfully suing out the writ of injunction, was not breached.

If, however, a writ of injunction had issued, there could be no damages recovered by defendants in this case. The object of the bill was to obtain certain credits on the notes executed by complainant to Washburn, trustee, and to restrain him from taking any steps to collect said notes except in this court. The condition of the bond is, that it shall be void if complainant prosecutes his injunction bill with effect. And, in the language of the statute, the costs and damages are to be paid upon the dismissal of his bill. But his bill was not dismissed; the relief was not denied, but granted; he prosecuted his injunction bill with effect, and therefore the bond was, by its own terms, void. The loss, in this case, did not arise from the filing of the injunction bill. Judgment on the notes, upon an adjustment of the equities, could have been, and, indeed, was taken on them in this court. The case was begun in 1873, but never reached a final decree until 1879, and the loss resulted, no doubt, from this long delay.

From the statement, in the nature of a report, made out by the clerk, I am of opinion that no judgment can be rendered against the sureties on the injunction bond. I never knew until I saw that statement that no injunction had been issued. Had counsel called my attention to that fact, it would have saved some trouble and a little expense: 2 Tenn. Ch. Rep., 263, 356.

McFARLAND, J., said:

I adopt this opinion, except so far as it is pred-- icated upon the fact that no injunction was in fact issued.    This I do not think material; but the other reasons given for refusing the judgment are sufficient.

COOPER, J., delivered the opinion of the court upon all the points decided except upon the point embodied in the last syllabus, and his dissenting opinion on that point:

On May 2, 1870, the complainant, John Baxter, contracted to sell to M. C. Wilcox, E. K. Wilcox and others, a body of land, with the personal property thereon used for mining coal, lying on Emory river in Roane county, Tennessee, for $40,000, payable at a future day in instalments with interest. Afterwards, the purchasers obtained a charter of incorporation under the name of the Wilcox Mining Company, and transferred this land and other lands to the company, and converted their interest in the land into capital stock in the company.    On June 1, 1871, the Wilcox Mining Company, by deed of that date, reciting that it needed "additional means to pay its debts and to extend and carry on its business, and had resolved to raise the same by the issuance and sale of its bonds," conveyed all its land, including the tract bought from Baxter, with the personal property thereon used in mining and transporting coal, to W. P. Washburn in trust to secure the payment of the

bonds, to be issued and sold by the company, and the coupons thereto attached. The deed recited that the company had issued one hundred bonds of one thousand dollars each, payable to bearer in ten years from the 15th of July, 1871, bearing interest at the rate of seven per cent. per annum, payable at the Bank of America, New York, or the Exchange and Deposit Bank of Knoxville, Tennessee, "according to the tenor of the coupons to said bonds attached, which it is intended to put upon the market and sell." The deed further provided that, in the event the company failed "to pay the coupons attached to all or to any one or more of said bonds, as the same mature and are presented for payment," the trustee, "upon being requested to do so by any *bona fide* bondholder of any such unpaid coupon or bond," should take possession and sell the land and other property free from the equity of redemption, on a credit of one and two years in equal instalments, taking notes with good security, and retaining a lien. It further provided that out of the proceeds of sale the trustee "shall retain a reasonable compensation not exceeding two per cent. on the amount realized," and apply the balance to the payment of the bonds and the interest accrued and unpaid thereon *pro rata* until they are fully paid.

On the same day that this deed was executed, an agreement was entered into between John Baxter, the Exchange and Deposit Bank of Knoxville, and the Wilcox Mining Company, which was reduced to writing, and signed, the mining company signing by "M.

C. Wilcox, president," etc.    This agreement recited
that John Baxter had that day united with E. P.
Bailey in conveying to the Wilcox Mining Company
certain lands in the deed of conveyance mentioned, in
consideration of $12,600, secured by the notes of M.
C. and E. K. Wilcox, and one hundred coupon bonds
of the Wilcox Mining Company for $1,000 each, the
first coupons maturing January 15, 1872, pledged as
collateral security for the payment of said notes.    The
agreement described the notes given by M. C. and E.
K. Wilcox to Baxter, for the $12,000, the purchase
money of the land conveyed by Baxter and Bailey to
the Wilcox Mining Company, and recited that the
company had deposited its one hundred bonds for
$1,000 with the Exchange and Deposit Bank as col-
lateral security for the payment of said purchase money
to Baxter.    The agreement then proceeded thus:  "And
it is hereby stipulated between the parties hereto that
said Exchange and Deposit Bank shall proceed to sell
said bonds as best it can and at its discretion, and
apply the proceeds as follows, to-wit:  the proceeds of
the first ten bonds shall be paid to said John Baxter;
the proceeds of the second ten bonds shall be paid
to the said Wilcox Mining Company;  and the pro-
ceeds of the residue of said bonds, so far as may be
necessary, shall be paid to said John Baxter until his
three notes aforesaid, with interest accrued thereon,
shall be paid by the Wilcox Mining Company.    In
consideration of this agreement, the said Baxter agrees
to waive his equitable lien for the purchase money
upon the land so sold by him."

The bonds were deposited with the bank under this agreement; some of them were sent to the defendants, the Drake Brothers, in New York for sale. Some of these bonds were sold or otherwise disposed of by the bank or the company, but the greater part remained in the custody of the bank, not being marketable.

In April, 1872, the company having failed to pay the January coupons of that year, the trustee, at the request of Baxter, took possession of the property conveyed by the trust deed and advertised it for sale. The mining company sued out an injunction, and the sale was postponed by the trustee to a given day, at which time, the injunction having been dissolved, he proceeded to sell, and the property was struck off to Baxter at the price of $42,000, who took possession and sold some of the personalty, but afterwards refused to comply with the terms of sale. The trustee again advertised, and, on the 12th of October, 1872, sold the property, when Baxter once more became the purchaser at $20,000. He complied with the terms of sale by giving his two notes in equal instalments at one and two years, with E. P. Bailey as his surety.

On the 21st of October, 1873, shortly after his first note fell due, Baxter filed the present bill, "for himself and all other bondholders and beneficiaries," against the trustee, the mining company, its assignee in bankruptcy, the company having been declared bankrupt, M. C. and E. K. Wilcox, the Drake Brothers, the Exchange and Deposit Bank, and the holders of the bonds without naming them. The main object of

the bill was to enjoin the collection of his notes to the trustee, and to obtain a credit thereon for the proportion of the purchase money of the trust property which the bonds of the mining company, still held by the bank as collateral security for the complainants' debt, might be entitled to. For the purpose of obtaining the latter object, the holders of any of the bonds were required to come in and file them. The bill set forth the facts herein before recited, gave the number of bonds disposed of by the bank, and the number retained. It further stated that the Drake Brothers, of the bonds entrusted to them by the bank, had retained and converted to their own use eighteen bonds, claiming to hold them for advancements made to the Wilcox Mining Company; that at the time of the conversion on the 3d of April, 1872, these bonds were worth sixty cents on the dollar; and that complainant had brought suit at law against W. F. Drake, one of the partners, for this sum. The bill sought to hold the other partners liable for the same amount, and asked for and obtained an order for an attachment of the share of these bonds in the proceeds of the trust sale, alleging that the bonds were still held by the firm. The Drake brothers, W. F. and A. A. Drake, demurred to the bill, but the demurrer was overruled, and no question is made. in the argument submitted in their behalf, on the demurrer. They then answered, admitting the possession of the eighteen bonds, and claiming them as having been deposited with them by the agent of the Wilcox Mining Company as collateral security for money advanced by them

to the company. The other defendants filed answers, and the holders of bonds came in by petition, and were permitted to answer and present their bonds. Such proceedings were had in the cause that a final hearing on the merits was had on the 1st of April, 1879. The chancellor was of opinion, and so declared, that the complainant was entitled to have the *pro rata* share of the bonds undisposed of, and still held. by the bank as collateral for Baxter's debt, in the trust fund applied as a credit on his notes given for the property at the trust sale, and that the other bonds were severally entitled to be paid *pro rata* out of the residue of the purchase money, and the holders of these bonds were required to come forward and file them in a given time. The court further held that the Drake Brothers were liable to Baxter for the value of the eighteen bonds wrongfully withheld by them, and that complainant was entitled to subject the *pro rata* share of these bonds in the trust funds to the satisfaction of this demand. The last sale made by the trustee was declared to be valid. It was referred to the master to take proof and report the number of bonds held by the various parties, the amount due thereon, the trust fund, and the *pro rata* of each bondholder therein after deducting the expenses of the trust. The clerk was also required to ascertain and report the value of the eighteen bonds on the 3d of April, 1872, with which the Drake Brothers were to be charged.

The master made a report of the matters of reference, which was, with one modification in favor of

complainant, confirmed. He found that the eighteen bonds in the hands of the Drake Brothers were worth on April 3, 1872, sixty cents on the dollar, and the chancellor rendered a decree in favor of the bank for the use of Baxter against A. A. Drake for this value with interest, a judgment in the suit at law having been previously recovered against W. F. Drake, the other partner, for the bonds at the same valuation. The court also subjected the *pro rata* dividend of the eighteen bonds in the trust fund to the satisfaction *pro tanto* of the decree against Drake. The chancellor rendered a decree against complainant for the balance due from him on his purchase notes after deducting the *pro rata* on the bonds held by the bank for him, and the *pro rata* of the eighteen bonds held by Drake Brothers, and ordered that if the money was not paid into court within twenty days the property should, by virtue of the lien retained, be sold in satisfaction thereof. The proceeds of this decree were directed to be paid to the other bondholders in the proportion of the amount found by the report to be due them severally. Execution was awarded against Baxter and his surety, E. P. Bailey, for any balance of this decree not paid by the sale of the land and other property. The money not being paid, the property was sold, and brought $1,250. Afterwards, the bondholders, other than Baxter and the Drake Brothers, moved for a judgment against the complainant's surety on his injunction bond for the balance of the recovery against complainant after deducting the net sale of the property, and it was referred to the mas-

ter to ascertain and report what damages had been sustained by reason of the suing out of the injunction. The master reported, at a subsequent term, the facts touching the suing out of the injunction, and that an execution had been issued upon the decree against Baxter and Bailey and returned *nulla bona*. The master found the damages to be the uncollected balance due upon the decree. The chancellor was, however, of opinion that upon the facts stated in the report no damages had accrued on the bond, and no judgment could be rendered against the surety. The defendant S. B. Lyon, one of the bondholders, appealed from this decree, "and all former decrees rendered in the cause," and the Drake Brothers have brought the case up by writ of error.

The depositions taken by the Drake Brothers on their own behalf were, upon exceptions taken by the complainant in advance of the hearing, excluded for defects specified, and no error has been assigned on the chancellor's ruling in this regard. Excluding these depositions, there is ample evidence that the eighteen bonds were placed in the hands of Drake Brothers by the Exchange and Deposit Bank for sale, and that the bank, for the benefit of the complainant, was entitled to recover from them the value of these bonds, waiving the tort, by bill and attachment in equity: *Kirkman* v. *Phillips*, 7 Heis., 222; *Baker* v. *Huddleston*, 3 Baxt., 1. And the weight of evidence would be in favor of the finding of the chancellor even if the excluded depositions are read. For, the witnesses for the Drake Brothers, and the brothers themselves

prove that the bonds in controversy were sent to the Drake Brothers by the Exchange and Deposit Bank to be sold and the proceeds accounted for to the bank; that while the cashier of the bank and the agent of the mining company were both in New York, these bonds were entrusted to the agent of the company to raise money for the bank; that the negotiations for a sale of the bonds were made with the knowledge and assistance of the Drake Brothers, and that the bonds were then returned to the Drake Brothers. The cashier and the agent both testify that the latter handed the bonds to the former, and that he again deposited them with the Drake Brothers. The witnesses, whose depositions are excluded, do say that the bonds were returned by the agent. There is a conflict of testimony on this point, but the circumstances are all in favor of the version of the complainant's witnesses. The value of the bonds is to be estimated at the date of the conversion, and the evidence sustains the finding of the master, which was adopted by the court by confirming the report. There is no error in so much of the chancellor's decree.

The complainant in his bill asserts that his original contract of the 2d of May, 1870, with the Messrs. Wilcox and others was, at the request of the latter, cancelled, all the purchasers, except M. C. and E. K. Wilcox, surrendering all claim to the land and other property, and the two Wilcoxes, then the sole parties in interest, entered into the new contract of the 1st of June, 1871. These allegations are admitted in the answer of the assignee in bankruptcy of the Wilcox

Mining Company, and by that company and the Wilcoxes in allowing the bill to be taken for confessed against them.    These are the only parties who could put the facts in issue.    In this view, the Wilcoxes and the mining company were one and the same in interest, and the agreement and trust conveyance of the 1st of June, 1871, were virtually one transaction, and so treated by all the parties.    Clearly, therefore, the complainant would be entitled to the bonds of the mining company, deposited with the Exchange and Deposit Bank under the agreement, as collateral security for the purchase money due him for the property conveyed.    And, if there were nothing else in the case, the security of the trust assignment would enure to his benefit to the extent of the bonds not sold to others.

It is first insisted on behalf of the bondholder who appeals, that there is no proof that the mining company had anything to do with the transaction of the 1st of June, 1871; that it took the land conveyed by complainant and Bailey free from any lien for the purchase money; that it could not become security for the new purchase notes, and that the pledge of the bonds as collateral was a misapplication of the corporate funds, *ultra vires* and invalid.    Upon the question of fact raised by this argument, the record is in conflict with the position assumed.    The Wilcox Mining Company is a party to the agreement of the 1st of June, 1871, the same being signed by its president, and the conveyance of the land and other property is made on the same day to the company, and

the company re-convey to Washburn in trust to secure the bonds in controversy. As between the complainant on the one part and the mining company and the Wilcoxes on the other, the facts alleged in the bill are admitted, and proved by M. C. Wilcox, so far as they bear on this point. The deed to the company does recite, in accordance with the agreement, the payment of the purchase money, but such a recital would not affect the vendor's equitable lien for unpaid purchase money, nor, of course, estop him from showing the truth: *Bentley* v. *Jordan,* 3 Lea, 361. The object of the recital was to secure to the subsequent holders of the bonds the benefit of the property under the trust assignment free from a lien for purchase money which would be prior and superior thereto. The vendor was left at liberty to secure himself otherwise. And what was done was in effect the retention by the complainant of the original liability of the two Wilcoxes for the purchase money, and the assumption by the company of the same debt to be paid out of the proceeds of its bonds. It is the ordinary case of a sale and conveyance of land, and the assumption by the vendee of the payment of a debt of the vendor for the same land to a former owner. In form, the Wilcoxes were the principal debtors, and the bonds of the company only collateral security, whereas in reality the company was the principal debtor and the Wilcoxes the sureties: *Snyder* v. *Summers,* 1 Lea, 539; *Moore* v. *Stovall,* 2 Lea, 543. And the pledge or payment of its bonds on the debt would not be *ultra vires,* but proper.

Baxter *v.* Washburn.

It is next argued· that complainant is not entitled to the benefit of the *pro rata* of the trust fund by reason of the bonds claimed, because the terms of the trust deed exclude from its benefits all bonds not actually sold. The argument requires for its support a very literal interpretation of some of the language used in the trust deed. That instrument does recite that the company had issued the bonds, "which it is intended to put upon the market and sell." And it equally recites that it needed "additional means to pay its debts," and "had resolved to raise the same by the issuance and sale of its bonds." But the deed provides for the equal payment of all these bonds to any *bona fide* holder, and it cannot be doubted that any person to whom the bonds were properly pledged for a debt of the company would be such a holder. All of the bonds in the hands of the appellants, the Drake Brothers, are claimed under a pledge, and about half of those produced by the appellant Lynn were obtained in a similar way. The intention was undoubtedly to sell the bonds, and pay the debts of the company, including the debt of complainant, out of the proceeds of sale, but the record shows that the parties were unable to carry out the intention because the bonds could not be sold. The pledgees not being able to realize by a sale, have the right to enforce the bonds themselves against the company and the trust fund to the extent of their respective demands. The provisions of the trust deed were notice to all persons who might come into rightful possession of any of these bonds, that the bonds were all equally

secured.    The fact that one holder had no notice of
the transaction of the company with another, would
not affect the rights of the latter.

It is suggested in the argument submitted on be-
half of the appellants, that Baxter's title to the land
has failed, the property having been proceeded against
and sold for purchase money due from him to his
vendor.    The fact does not appear in this record, nor
are there any pleadings on which to base any relief
as between any of the parties on this ground.

The chancellor's decree on the merits, and upon
the report of the master based thereon, will be af-
firmed.

The only remaining question arises upon the mo-
tion made for a judgment against the surety of the
complainant on his injunction bond for the unpaid
balance of the judgment or decree against complainant
on his purchase notes, execution having been returned
thereon *nulla bona.*    The facts bearing on this point
are set out in the master's report, to which no ex-
ceptions were filed.    The main object of the original
bill, as we have seen, was to obtain a credit on the
complainant's notes for the *pro rata* to which the
bonds held by him would be entitled out of the trust
fund, the trustee having declined to allow the credit.
The bill prayed "for an injunction to restrain W. P.
Washburn from taking any steps to collect your ora-
tor's notes, or either of them, except in this court in
this cause, unless authorized by order of this court."
The fiat obtained directed an injunction to issue as
prayed, "upon complainant's entering into bond with

security in the sum of five thousand dollars, as required by law." The Code, sec. 4439, provides that when, before judgment at law, the investigation of the questions involved has been drawn by injunction into the court of chancery, upon the ground of a concurrent jurisdiction in that court, the condition of the bond shall be to pay costs and damages awarded by the chancery court on dismissing the bill. The bond given in this case, on October 21, 1873, has the following condition: "Now if the said John Baxter shall prosecute said bill of injunction with effect, or in case he should fail therein, or the same be dismissed, shall abide by, perform and fulfill the judgment or decree of said court, and pay all costs and damages that may be sustained from wrongfully suing out said injunction, then the above obligation to be void, otherwise to remain in full force and effect." No injunction was in fact ever issued. Washburn was served with subpœna to answer on the 29th of October, and filed his answer on the 23d of December, 1873, and submitted to the jurisdiction of the court, joining in the prayer of the bill for a construction of the trust deed, and such orders and decrees as would protect him. On the 30th of March, 1878, an order was made as follows: "Affidavit having been made by W. P. Washburn that the security on the note enjoined is insolvent, and that the principal has assigned his property, and he having moved the court for an order on John Baxter to give an injunction bond, in the sum of $10,000, on or before the second day of the next term, or said injunction will be dissolved, the court

is pleased to, and does make said order, and if the same is not complied with on or before the second day of next September term, the said injunction heretofore granted in this cause will be dissolved." The complainant never gave any bond under the order, but on September 17, 1878, filed an answer tendering certain bonds of the Wilcox Mining Company, and claiming to be entitled to the larger portion of the notes enjoined, stating that a lien was retained on the land to secure the notes, and that no additional security was necessary. No further order was made in regard to the execution of said bond. The chancellor's decree on the merits was, "that the bill of complainant is sustained by the proof, and that complainant is entitled to the relief therein sought, except as to the Drakes," and a reference was made to the master to take the accounts required. Upon the coming in of this report, the judgment against complainant and his surety on his notes was rendered. There has been a return of *nulla bona* on the execution issued thereon for the balance unpaid by the sale of the trust property. The master adds: "That John Baxter made an assignment of all his property on the 30th of January, 1878, and that prior to that time the above amount (the balance due on the judgment), if there had been a judgment, could have been collected."

The bill sought to enjoin the trustee from taking any steps to collect complainant's notes except in the court of chancery, and in the particular case. It proceeded upon the ground that the court of chancery

Baxter *v.* Washburn.

had concurrent jurisdiction with the courts of law to render judgment on the notes, and so this court has invariably held where, before judgment at law, the litigation has been transferred to this court by a debtor who seeks equitable relief. The case falls, therefore, within the provision of the Code quoted, and a bond conditioned for the payment of costs and damages was proper. The bond is in lieu of the payment of the money into court, and the damages occasioned by the injunction would be any loss occasioned by the nonpayment of the amount actually due at that time, if the debtor were solvent. The loss of any portion of the debt by the subsequent insolvency of the principal would be the natural and proximate result of the injunction. Unless, therefore, some special ground exists in this case to take it out of the general rule, the surety would be liable.

One special ground relied on is found in the fact that no injunction was ever actually issued. But the effect of an injunction ordered is the same before as after its issuance upon those who have knowledge of the order, and mere delay in issuing the injunction will not prevent the effect: *Farnsworth* v. *Fowler,* 1 Swan, 1; *Boils* v. *Boils,* 1 Cold., 284. To entitle a party to damages upon the dissolution of an injunction, it is sufficient that he has rendered himself obedient to it, though the writ may never have been served upon him: *Cumberland* v. *Hoffman,* 39 Barb., 16. If the rule were otherwise, a party might be punished for disobeying an order for an injunction of which he had notice, and then deprived of the in-

demnity of the injunction bond by the neglect of the other party to sue out the injunction after he had obtained all its benefit by the notice. And the Supreme Court of Arkansas has held that the sureties in the bond are estopped to deny that the injunction was granted: *Fowler* v. *Scott*, 11 Ark., 675. It is the duty of the party who has perfected his right to the writ, with the knowledge of his opponent, to notify the latter of his intention not to proceed under it, if he concludes to abandon it. In the present case, the complainant not only relied, but insisted upon his injunction, and resisted the application to require him to give a larger bond upon the ground that the security was ample under the circumstances, treating the injunction as in full force. Now, he seeks to deprive the aggrieved parties of the security actually given.

The main ground relied on to take this case out of the rule is, that the complainant has successfully prosecuted his suit and there has been no breach of the condition of the bond. The condition is to prosecute the bill of injunction with effect, or in case he should fail therein, or the same be dismissed, to abide by, perform and fulfill the judgment or decree of the court, and pay all costs and damages that may be sustained for wrongfully suing out the injunction. The injunction was against proceeding on the notes or either of them at law, and the object of the bill is to have an equitable set-off. To the extent of that set-off so far as the debt enjoined is concerned, and in other respects unconnected with the debt, the complainant

Baxter *v.* Washburn.

has successfully prosecuted the bill of injunction to effect. As to so much of the debt as is not covered by the set-off, the bill of injunction, that is the injunction, has not been successfully prosecuted: *White* v. *Clay*, 7 Leigh, 68. The complainant has failed therein, and judgment has been rendered against him for that part of the debt, the injunction dissolved, and the bill in the eye of the law dismissed. A formal order of dismissal is not required. That part of the debt has been lost by the insolvency of the complainant pending the injunction, and by reason of the injunction. The bond, in this contingency, requires him to abide by, perform and fulfill the judgment or decree of the court, to the extent of the costs and damages adjudged for wrongfully suing out the injunction. There has been a breach of the bond, and the surety is, in my opinion, liable. My brother judges concur, however, with the chancellor on this point, and adopt his opinion as the opinion of the court, which is herewith filed.

The decree below will be affirmed, and the appellants will pay the costs of this court.