# REAGAN v. WOLSIEFFER et al.—240 S. W. (2d) 273.

Middle Section.    March 2, 1951.

Petition for Certiorari denied by Supreme Court, May 12, 1951.

J. B. Reagan, and Hollis A. Neal, both of Jamestown, for appellant.

Robert F. Turner, and Ward R. Case, Jr., both of Jamestown, for appellees.

HOWELL, J.   On June 11, 1948, J. B. Reagan filed the bill in this case in the Chancery Court of Fentress County against P. D. Wolsieffer, a resident of the State of Minnesota but who was alleged to be temporarily residing in Jamestown, Fentress County, Tennessee, and twelve others as defendants who were alleged to be nonresidents

of Tennessee. The bill alleged that the defendants were the owners of an Oil and Gas lease upon some lands in Fentress County, and that acting through the defendant Wolsieffer as agent for himself and his codefendants, they were trying to fraudulently dispose of this lease for the purpose and intent of defeating complainant's collection of an indebtedness owing by them to him in the amount of $2,400.00. The bill prayed, among other things for an injunction "to enjoin and restrain the defendants or either of them or the defendant P. D. Wolsieffer, acting for himself or in the capacity of any other person from selling, transferring or disposing of in any manner any interest in said lease or any of the property situated in said lease the same to include each and every portion or particle of personal property, including casing in wells, tanks, pipes, engines, drilling rigs, etc.''

The injunction was granted upon complainant's application and the execution of a bond by him in the amount of $5,000.00.

P. D. Wolsieffer filed an answer on July 30, 1948, in which he denied the material allegations of the bill. Publication was made for the remaining defendants and on August 17, 1948, they filed their answer in which they denied owing complainant anything and also denied the other material allegations of the bill.

On April 6, 1949, upon motion of the complainant, the original bill was dismissed and in the decree, upon motion of the defendants, the case was referred to the Clerk and Master to ascertain the amount of damages sustained by the defendants by reason of the wrongful suing out of the injunction.

On March 21, 1950, the Clerk and Master filed a report in which he fixed the amount of damages sustained by the defendants at $5,000.00

Exceptions were filed by the complainant to the report of the Clerk and Master on April 4, 1950. The Chancellor took the case under advisement and on September 20, 1950, filed a finding of facts and opinion in which the exceptions to the report of the Clerk and Master were ordered overruled and the report confirmed. By decree entered October 3, 1950, the exceptions were overruled, the report confirmed and a judgment entered in favor of the defendants and against the complainant and the surety upon his bond, in the sum of $5,000.00.

The complainant by proper procedure has appealed to this Court and has filed a number of assignments of error.

It is insisted for the complainant that there is no competent material evidence to support the decree of the Chancellor.

Section 10620 of the Code of Tennessee is as follows: "In all cases tried on the facts in a chancery court and afterwards brought for review to the court of appeals, both the chancellor and the court of appeals shall, to the extent that the facts are not stipulated or are not concluded by the findings of the jury, make and file written findings of fact, which thereupon shall become a part of the record; provided, that before any such findings shall become final in either court reasonable opportunity shall be afforded the parties to examine the findings and to ask for different or additional findings; and provided, further, that in the chancery court the findings may be incorporated in the decree, but opportunity shall be given the parties to be heard in respect of said findings to be so incorporated in such decree; and provided, further, that where there has been a concurrent finding of the

master and chancellor, which under the principles now obtaining is binding on the appellate courts, the court of appeals shall not have the right to disturb such finding. To the extent that the findings of the two courts concur, they shall, if there be any evidence to support them, be conclusive upon any review of the facts in the supreme court; but to the extent that they do not concur, they shall be open to examination in that court. The court of appeals shall not be limited to the consideration of such facts as were found or requested in the lower court, but it shall independently consider and find all material facts in the record; and either party, whether appellant or not, many assign error on the failure of the chancellor to find any material fact, without regard to whether such fact was found or requested in the lower court.''

In the case of Black v. Love & Amos Coal Co., 30 Tenn. App. 377, 206 S. W. (2d) 432, 433, this Court in an opinion by Felts, Judge, said:

''A concurrence of the Master and the Chancellor is conclusive on appeal (Code, sec. 10620 except (1) where it is upon an issue not proper to be referred (State ex rel. [Weaver] v. Bolt, 130 Tenn. 212, 169 S. W. 761); (2) where it is based on an error of law (Hord v. Holston River Railroad, 122 Tenn. 399, 123 S. W. 637, 19 Ann. Cas. 331, 135 Am. St. Rep. 878); (3) where it is upon a question of law or mixed fact and law, (Dale v. Hartman, 157 Tenn. 60, 6 S. W. (2d) 319); or (4) where it is not supported by any material evidence (Code, sec. 10620).

''Such a concurrence is conclusive not only as to the credibility of the witnesses and the basic evidentiary facts but also as to the reasonable inferences drawn from such facts. It has the same force and effect as a verdict of a jury approved by the trial judge. Conaway v. New

York Life Ins. Co., 171 Tenn. 290, 293-295, 102 S. W. (2d) 66, 67, 68; Gibson's Suits in Chancery, 4th Ed., section 620, and cases there cited."

In this case we find that the amount of damages sustained by the defendants was a proper question of fact to be referred to the Clerk and Master. There was no exception to the action of the Chancellor in ordering the reference and this question does not appear to have been raised in the Chancery Court. No error of law in ordering the reference appears from the record. The findings of the Clerk and Master and the Chancellor as to the amount of damages in this case is a question of fact and the question here is whether or not there is any material competent evidence to support the finding.

The principal defendant P. D. Wolsieffer, one of the owners of the lease, the sale of which was enjoined, testified that on June 11, 1948, the date the injunction was issued, the lease and personalty involved were worth $15,000.00, and that on April 9, 1949, the date the bill was dismissed and injunction dissolved, it was worth $10,000.00. This witness further testified that at the time of the issuance of the injunction the defendant had an offer from George H. Davis, of Minneapolis, Minnesota, for the purchase of the lease and personalty connected with it of $15,000.00 and that the property was not sold to Davis because of the injunction. After the injunction was dissolved on April 6, 1949, an effort was made to sell to Mr. Davis, who made another offer for the property of $10,000.00 and the reason for the reduction of the offer was that "the price of equipment had fallen plus the fact that it had been laying idle for almost a year, also that the local oil activity had dropped considerably after what it had been in May of 1948. Considering the depreciation

on the equipment and oil properties values having gone down he felt that this new offer was a very fair price."

George H. Davis testified for the defendants and corrobated the testimony of Wolsieffer as to the offer and said that the $15,000.00 offer had been accepted and the trade not consummated on account of the injunction. He further testified that $15,000.00 was the fair, cash market value of the property at the time of the offer in June 1948, and that in April 1949, he had made an offer of $10,000.00, the value having been reduced and in explaining the reduction he said: "Well, in the six months to a year prior to April 1949, the price of steel tubular goods have decreased up to 30%, also equipment that was on the property had depreciated in value, plus the fact that oil interest in that area has dropped considerably. By that I mean that activity such as drilling and operating has practically ceased, and therefore I feel that my offer of $10,000.00 represented the fair market value of the property."

A witness O. G. Carroll appears to have qualified as an expert in the values of such property and testified in part as follows:

"Q. Was there any change in the fair cash market value of second hand oil drilling and producing equipment from June 11, 1948 until April 6, 1949? A. Yes Sir.

"Q. In what way? A. There has been a reduction in the price.

"Q. From your experience by buying and dealing in this sort of equipment. How much do you say its fair cash market cash value decreased, if any, from June 11, 1948 until April 6, 1949? A. I would say that the majority decreased at least one-third and a lot of it went down 50 percent."

Another witness C. L. Eleson, a "producer of oil and used equipment dealer" testified in part:

"Q. You deal in or buy and sell used oil producing equipment? A. Yes Sir.

"Q. Where do you live? A. Albany, Ky.

"Q. How long have you been in the oil equipment business? A. About twenty years equipment business oil 28 or 30 years.

"Q. Do you deal in second hand used equipment? A. Yes, we don't call it second hand we call it used equipment.

"Q. Was there any change in the fair market cash value of used drilling and producing equipment from June 11, 1948 until April 6, 1949? If there was any change tell about it? A. There was change in local market conditions approximately 50 percent.

"Q. Do you mean 50 percent increase or decrease? A. Decrease."

We therefore find that there was material competent evidence to support the concurrent findings of the Clerk & Master and the Chancellor.

In Dale v. Hartman, 157 Tenn. 60, 6 S. W. (2d) 319, in an opinion by Justice Chambliss, the third headnote is: "The testimony of competent witnesses as to the value of definite items of tangible personal property does not contain such an element of opinion or estimate as to change the rule that the concurrent finding of the Master and Chancellor, has the effect of a verdict of a jury."

And in the opinion the court said: "We are unable to agree with the learned Court of Appeals that the exception invoked has application to the case now before us, in which it is apparent that the concurrent finding related alone to the matter of the value of definite

items of tangible personal property, as to which witnesses before the master had knowledge and observation and testified and as to which an appellate court could have no independent judicial judgment or opinion.''

Several of the assignments of error are to the effect that the Court erred in overruling objections to testimony, as irrelevant and incompetent.

We do not undertake to discuss each of these exceptions. Some of them are too general and cannot be considered and others go to the value or weight to be given the testimony and the Clerk and Master and Chancellor have passed upon the question of the preponderance of the evidence.

In the case of Hood v. Grooms, 4 Tenn. App. 511, this Court said: ''The ground of plaintiff's objection was that the testimony first above stated was 'incompetent,' and the defendants say that this objection was not good because too general. Ordinarily, objections must specify the grounds of the exception. Such exceptions, and the use of the words, 'incompetent, irrelevant and immaterial' do not set forth specific grounds of exceptions, as they are too general and do not give the other party and the court notice of what the party intends to rely upon Murray v. Frick, 277 Pa. 190, 121 A. 47, 29 A. L. R. 74, 38 Cyc., 1386; 26 R. C. L., 1048, 1050; Railway Co. v. Beeler, 90 Tenn. 548, 18 S. W. 391; but a general exception is sufficient where the evidence is incompetent for any purpose. See McCadden v. Lowenstein, 92 Tenn. 614, 625, 22 S. W. 426; Gibson v. Parkey, 142 Tenn. 99, 217 S. W. 647; 5 Michie's Tenn. Ency. Dig. 361.''

Some of the testimony of witnesses for the defendants is excepted to as merely the conclusions and opinions of the witnesses. There is no merit in these assignments. The defendant Wolsieffer was one of the

owners of the lease and the witness Davis had made an offer to purchase it and the personalty accompanying it. Other witnesses whose testimony is excepted to qualified as experts and were familiar with the values of oil leases in the vicinity of the lease in question. In Wilson v. Bryant, 167 Tenn. 107, 67 S. W. (2d) 133, 134, the Supreme Court said: "A witness who is familiar with the value of property of the same character, although he has never seen the property in question, is competent as an expert witness on such value. Jones' Commentary in the Law of Evidence (2d Ed.) vol. 3 p. 2492; Huddy's Encyclopaedia of Automobile Laws (9th Ed.) vols. 17-18, pp. 550, 551."

It is insisted that the defendants did not prove that they were the owners of the lease in question. This insistence is without merit as the original bill, which is sworn to, alleged that the defendants were the owners.

In Gibson's Suits in Chancery in par. 458, page 395, it is said: "The facts, positively and directly alleged in the bill, are in the nature of admissions by the complainant; and the defendant may use them as such at the hearing. Whether such allegations are true, or not, is immaterial, they being put forth as true are of the nature of judicial admissions for the purposes of that particular trial."

In the case of Atchley v. Sims, 23 Tenn. App. 167, 128 S. W. (2d) 975, this Court held that: "A party need not prove what is admitted in the pleadings of his adversary." See also many other cases.

It is insisted for the complainant that the injunction did not become effective as to the nonresident defendants other than Wolsieffer, as the court did not acquire jurisdiction of these twelve defendants until they filed their answers.

In Gibson's Suits in Chancery, par. 845, on page 686, it is said: "When An Injunction Becomes Effective.—An injunction become effective as to the party enjoined only from the time of actual notice. But to render an injunction binding and operative upon a defendant, it is not necessary that he should have been officially apprised of its existence, or actually served with the writ. If the defendant has heard the order of the Court granting an injunction, or has in any manner received actual notice of its existence, he is as effectually bound by its provisions as if actually served with process. So, if an injunction has been properly granted, it will be effective if served upon defendants beyond the jurisdiction of the Court, or the limits of the State, it only being necessary that they should be apprised of the order of the Court to render it binding."

In this case the original bill alleged that the defendant Wolsieffer was acting for himself and as the agent and representative of the remaining defendants. In the old case of Baxter v. Washburn, 76 Tenn. 1, the Supreme Court said: "But the effect of an injunction ordered is the same before as after its issuance upon those who have knowledge of the order, and mere delay in issuing the injunction will not prevent the effect: Farnsworth v. Fowler, 1 Swan 1; Boils v. Boils, 1 Cold. 284. To entitle a party to damages upon the dissolution of an injunction, it is sufficient that he has rendered himself obedient to it, though the writ may never have been served upon him; Cumberland Coal & Iron Co. v. Hoffman Steam Coal Co., 39 Barb. N. Y., 16. If the rule were otherwise, a party might be punished for disobeying an order for an injunction of which he had notice, and then deprived of the indemnity of the injunction bond by the

neglect of the other party to sue out the injunction after he had obtained all its benefit by the notice.''

It is said that the defendants have not shown that the injunction was dissolved. The bill was dismissed upon motion of the complainant on April 6, 1949, and the injunction was dissolved on that day. See Bilbrey v. Smith, 25 Tenn. App. 446, 158 S. W. (2d) 735.

There are other questions raised by the assignments of error which we will not discuss and in which there are no merits. We find no reversible errors in the action of the trial Judge on rulings upon exceptions to testimony or upon the merits of the controversy.

All the assignments of error are overruled and the decree of the Chancellor is affirmed. The appellant and his surety will pay the costs.

Affirmed.

Hickerson, J., and Kizer, Sp. J., concur.