HELEN FERRELL et al., Complainants-Appellees, v.
CLARENCE E. ELROD, Defendant-Appellant.
—469 S.W.2d 678

Middle Section. January 8, 1971.

Certiorari Denied by Supreme Court July 19, 1971.

132

Lawrence E. Levine, Leon Ruben, Nashville, for complainants-appellees.

Gullett, Steele, Sanford, Robinson & Merritt, Nashville, for defendant-appellant.

TODD, J. This is a suit for damages for breach of a lease agreement. The chancellor awarded damages to the complainants in the amount of $18,477.63, and defendant lessor has appealed.

The lease upon which suit is founded contained the following language:

"THIS LEASE AGREEMENT made and entered into on this, the .... day of ........, 1966, by and between Clarence E. Elrod, hereinafter referred to as

'Lessor', and Buford L. Ferrell and Helen A. Ferrell, hereinafter referred to as 'Lessees', and

WHEREAS, Lessor is the owner of a commercial building in Donelson, Davidson County, Tennessee, a portion of which he has agreed to partition and adapt to lessees use for a School of Cosmetology (to be identified as HELEN FERRELL'S SCHOOL OF COSMETOLOGY, INC.) according to plans and designs prepared by Raymond Beauty Supply Company and already approved by Lessor and Lessees as pertaining to the hereinafter described portion of said building; and

## WITNESSETH

That the Lessor, for and in consideration of the rents, covenants and agreements hereinafter provided, does hereby rent, demise and lease to Lessees the following described real property in Davidson County, Tennessee: * * *."

Said lease described certain space on the basement floor of said building and provided a ten-year term beginning July 1, 1966, at a monthly rental of $400.00. Other provisions of the lease will be cited hereafter as necessary. The signatures on said lease are as follows:

"HELEN FERRELL'S SCHOOL
OF COSMETOLOGY, INC.
/s/ Helen Ferrell

Helen Ferrell, President

/s/ Buford L. Ferrell

Buford L. Ferrell, Vice-Pres.

/s/ Clarence E. Elrod
Clarence E. Elrod, Lessor
/s/ Buford L. Ferrell
/s/ Helen Ferrell
Helen A. Ferrell
Lessees''

For reasons relating to zoning, contractual obligations'' to other tenants, and sewerage, the defendant lessor did not adapt the premises for the use of lessees as agreed, and the lessees never entered the leased premises. It is conceded that the lease was breached by the landlord, and the only questions raised on appeal relate to the ascertainment of damages.

A substitute location was obtained by another lease containing the following preface:

''THIS AGREEMENT entered into on this the 30th day of December, 1966, by and between HERBERT GENTRY and wife, AGNES GENTRY, hereinafter referred to as Lessor, and the HELEN FERRELL SCHOOL OF COSMETOLOGY, INC., hereinafter referred to as Lessee. * * *''

Said lease was signed as follows:

''LESSEES''
HELEN FERRELL SCHOOL
OF COSMETOLOGY, INC.
BY: /s/ Helen Ferrell
HELEN FERRELL, PRESIDENT
/s/ Buford L. Ferrell
BUFORD L. FERRELL, VICE PRES.

/s/ Buford L. Ferrell
BUFORD L. FERRELL
/s/ Helen Ferrell
HELEN FERRELL

"LESSORS"
/s/ Herbert D. Gentry
HERBERT D. GENTRY
/s/ Agnes C. Gentry
AGNES GENTRY

Other details of said lease will be cited hereafter as necessary.

The original bill named as complainants Helen Ferrell, Buford L. Ferrell, and Helen Ferrell's School of Cosmetology, Inc. The bill recites no specific rights of the corporation, but refers only to the rights of "complainants" collectively. The final decree orders that "complainants have and recover of the defendant" the sum of $18,477.63 and costs.

■ Before considering the assignments of error, it is necessary to point out and act upon the position of one of the complainants, Helen Ferrell's School of Cosmetology, Inc. The other two (individual) complainants are designated as "lessees" in both body and signature sections of the first lease. The name of the corporation is used in the body of the lease only to identify the proposed use of the building, and the signature of the corporation at the end of the lease is unaccompanied by any identifying word such as "lessee."

In this situation, the corporation was not a contracting party, and has no direct interest in the enforcement of the lease.

In 17A C.J.S. Contracts sec. 346, pp. 338, 339, is found the following:

"A person is not made a party to a contract merely by being named or described in it, or merely by the fact that such contract is referred to in a writing which evidences another contract to which such person is a party. A person has the right to determine who shall be his debtor or obligor, or the other contracting party, and it is not permissible to thrust another on such person without his consent. * * *"

(Citing Oman Construction Co. v. Tenn. Cent. Ry., 212 Tenn. 556, 370 S.W.2d 563 (1962)

"* * * While persons have been held liable as parties to the contract where they have signed their names thereto, although they are not elsewhere mentioned in it, in order that such a construction may be adopted it is necessary that the intention be apparent from the contract after the application of the accepted rules of construction. Also, it has been held or recognized that, where a third person merely annexes his name to a contract which in the body thereof does not mention him, and which is in itself a complete contract between other parties who sign it and are mentioned in it, such third person does not thereby become a party to the efficient and operative parts of the contract.

"Where a contract contains mutual and dependent stipulations between the original parties named in it,

the fact that a third person signs it will not create an inference that he was a surety for, or joint promisor with, one rather than the other of the original parties, and he will not be regarded as bound thereby. * *'' (Citing cases from Oklahoma, Wisconsin, Georgia, Alabama, Illinois, and New York.)  '

No question was made before the chancellor or upon appeal as to the rights of Helen Ferrell's School of Cosmetology, Inc. However, the cause is before this Court de novo and the final judgment will be the judgment of this Court. It is therefore incumbent upon this Court to enter a judgment which is consistent with the pleadings and evidence. Since the corporation, Helen Ferrell's School of Cosmetology, Inc., was not mentioned as a contracting party in the body of the first lease contract with defendant Elrod, and there is no allegation or proof that it was intended that the corporation should be a third-party beneficiary, it would be inappropriate to include the corporation as a beneficiary of any award of damages for breach of the lease. The original lessees, Mr. and Mrs. Ferrell, are shown to be the sole owners of the corporation, and any damages sustained by them, either directly, or indirectly through loss of corporate profits, may be properly awarded to the individual complainants.

The award of damages to the two individual complainants jointly with the corporate complainant would be complicated by differences in measures of damages to be awarded the individuals and the corporation, as will be discussed hereafter.

The suit of the complainant, Helen Ferrell's School of Cosmotology, Inc., is therefore dismissed, and the re-

mainder of this opinion will relate only to the rights of the complainants, Helen Ferrell and Buford Ferrell.

The chancellor ordered a reference to the master who reported damages of $19,180.86, which were reduced by the chancellor to $18,477.63, consisting of the following:

| "A. | Loss of profits | $ 7,170.00 |
|-----|-----------------|------------|
| B. | Extra Rent | 11,056.07 |
| C. | Loss of Interest | 45.00 |
| D. | Storage Charge | 200.00 |
| E. | Advertising Expense | 4.86 |
| | | $18,477.63" |

Each of the five assignments of error is directed at one of the foregoing items of damage.

█ The damages as finally awarded by the chancellor represent a concurrent finding of the master and chancellor. This Court has no authority to disturb such a finding unless (a) it is upon an issue not proper to be referred, or (b) it is based upon an error of law or a mixed question of fact and law, or (c) where it is not supported by any material evidence. Sec. 27-113 T.C.A.; Staggs v. Herff Motor Co., 216 Tenn. 113, 390 S.W.2d 245 (1965); Crouch v. Crouch, 53 Tenn.App. 594, 385 S.W.2d 288 (1964); Harriman Welding Co. v. Lake City Lightweight Aggregate Corp., 46 Tenn.App. 529, 330 S.W.2d 564, (1959); Pitt v. Bacherig, 43 Tenn.App. 273, 307 S.W.2d 798, (1957); Reagan v. Wolsieffer, 34 Tenn.App. 537, 240 S.W.2d 273 (1951) and authorities cited therein.

█ Such a joint finding by chancellor and master has the same force and effect as a verdict of a jury approved

by the trial judge. Reagan v. Wolsieffer, supra, Black v. Love and Amos Coal Co., 30 Tenn.App. 377, 206 S.W.2d 432 (1947) and authorities cited therein.

It is conceded that the ascertainment of damages was a proper matter for reference to the master, however it is insisted that the master and chancellor erred in respect to questions of law or mixed questions of fact and law and that there is no evidence to justify certain aspects of the finding.

The first assignment of error is as follows:

"The chancellor erred in determining the award for the complainants' loss of profits which they anticipated in the Elrod premises from profits made in the following tax year. This was in error because:

1. It was based on irrelevant and immaterial evidence and included profits which were speculative and conjectural at the time of the breach.

2. It determined these profits on the basis of profits in a ten month period while the breach by defendant Elrod only caused a delay of seven months."

It is shown that the corporation began operations in the new location under the second lease on April 1, 1967. Thus the 1967 operations reflected by the 1967 tax return were for the period of nine months from April 1, 1967 through December 31, 1967. By coincidence, the period of delay from the agreed inception of the first lease (July 1, 1966) to the date of actual entry and use of the substitute premises (April 1, 1967) is nine months, exactly

the same as the period of operation in 1967 (April 1 through December 31).

■ Item "A", supra, of the damages was derived from the 1967 U. S. Corporate Income Tax return of the corporation, Helen Ferrell's School of Cosmetology, Inc., which return showed a corporate profit of $12,760.00. The same return showed U. S. corporate tax liability of $2,807.00. It is also shown that complainant, Helen Farrell, received $750.00 salary from the corporation during 1967.

The master and chancellor accepted the corporate operating experience (and profit) during the first nine months of operation beginning on April 1, 1967, as the yardstick for measuring the profits which would have been realized from a nine month period beginning on July 1, 1966, as originally contemplated.

The master initially reported Item "A", supra, as $13,510.00 ($12,760.00 corporate profit plus $750.00 salary); however, the defendant filed exceptions to this item as follows:

"1. Defendant excepts to the finding of loss of profits in the amount of Thirteen Thousand Five Hundred Ten ($13,510.00) Dollars as part of Complainant's damages in that said damages are speculative and uncertain, not supported by the proof and contrary to the law in evidence of the case.

"2. That the Master erred in finding loss of profits as part of Complainant's damages in that the proof in support of same is incomplete, much of it was in-

competent and objected to at the time of taking the deposition of Helen Ferrell and Kay Ferrell.

"3. That the Master erred in accepting the testimony in regard to profits in that said testimony is incompetent in that initial tuitions paid by students were considered as immediate income by the bookkeeper rather than amortized over the period of schooling and there is no showing that the bookkeeper used any standard or acceptable accounting practices in arriving at the alleged profit figures."

In response to the foregoing exceptions, the master filed the following ruling:

"Objection number 1 of the defendant to certain testimony, evidence and proof offered by the complainants is hereby sustained and allowed. Objection number 2 of the defendant to said testimony, evidence and proof is disallowed and overruled."

and the following report to the chancellor:

"In lieu of item (1) A contained in the Report of the Clerk and Master filed October 3, 1969, the following Amended and Supplemental Report is hereby substituted and the prior said item deleted.

A. Loss of Profits ......................$7,171.00
(See Exhibit #1 to Deposition of Mrs. Kay Ferrell and pages 29 and 30 of the deposition of Helen Ferrell; computed by amortizing the total income against the length of the course and subtracting the income tax paid).

The new total amount of damages that complainants have sustained is Nineteen Thousand One Hundred Eighty Dollars and Eighty-Six cents, ($19,180.86).''

Thus it is seen that this latter amount of Item A, as reported by the master and confirmed by the chancellor was computed in the following manner:

| | |
|---|---:|
| Corporate profit April 1-Dec. 31, 1967 | $12,760.00 |
| Less adjustment for unearned tuition and corporate income tax | 6,339.00 |
| Net corporate profit | 6,421.00 |
| Plus salary drawn by Mrs. Ferrell | 750.00 |
| | $ 7,171.00 |

Defendant cites a number of authorities in support of his insistence that Item ''A'', supra, is not properly supported by substantial evidence.

In Farabee-Treadwell Co. v. Union Planters Bank & Trust Co., 135 Tenn. 208, 186 S.W. 92 (1916), there was a suit for failure to make a loan to plaintiff as agreed. The Supreme Court approved an award of damages suffered by a forced sale of grain at a loss, but declined to allow damages for profit which might have been derived from an advance in the market if the grain had not been sold. Possible profit from a market advance is subject to a number of variable factors, including the exercise of judgment as to whether and when the commodity should be sold. This is clearly distinguishable from the actual operation of the very business enterprise at a profit for an equal period of time, even though at a later date.

In Morristown Lincoln-Mercury, Inc., v. Roy N. Lotspeich Publishing Co., 42 Tenn. App. 92, 298 S.W.2d 788 (1956), an automobile dealer sued a newspaper publisher for loss of profits allegedly resulting from failure to publish certain advertising. Plaintiff contended that the default caused him to lose the sale of 20 or 30 new automobiles on which he anticipated a profit of from $300.00 to $400.00 each. No evidence was offered that there were actually 20 or 30 prospective buyers who would have purchased from plaintiff if only the advertisement had been published. This situation is clearly distinguishable from the present case wherein it is shown that an adequate supply of applicants were available to begin and sustain the operation of the school in a community where no other such school was in existence.

In Burge Ice Mach. Co. v. Strother, 197 Tenn. 391, 273 S.W.2d 479 (1954), the Supreme Court disallowed a claim for anticipated profits on strawberries and said:

"(2) We agree with the opinion of the Court of Appeals that the proof as to loss of profits was speculative. We do not interpret the opinion of the Court of Appeals as holding merely that loss of profits cannot be shown merely because it is a new business. The difficulty confronting Strother in this case is that while with reference to the strawberry crop in 1946, he proved that he had made contracts with growers to purchase their berries, yet he had no contracts with buyers for taking the strawberries off his hands after he had processed them. He simply said that he could have sold every one of them at a stated profit. Likewise, with reference to the meat, his testimony is that he could have obtained all the meat that he wanted and

that there was a ready market for it among many *restaurant* operators and others whom he offered to name who could not get meat at that time from their regular suppliers and who would have purchased from him. This same thing is true with reference to the turkey business.

"Since his business was new and in view of the above recited evidence, it seems clear that such evidence was purely speculative." 197 Tenn., p. 406, 273 S.W.2d p. 485.

The circumstances of *Burge* are distinguishable from those of the present case because the business was later begun and proved its capacity for producing profit.

In Jennings v. Lamb, 201 Tenn. 1, 296 S.W.2d 828 (1956), the Supreme Court approved damages for failure to deliver lumber as contracted and reversed the holding of the chancellor and Court of Appeals in respect to anticipated profits. The Supreme Court said:

"* * * It seems to us that if the lower Courts were correct in allowing him any loss of profits (and defendant has not challenged that ruling), he should be allowed loss of profits on the total amount of lumber due but not delivered, regardless of the question of firm orders, because he proved with reasonable certainty that he could have sold every foot of the lumber in the ordinary course of his business." 201 Tenn., pp. 9, 10, 296 S.W.2d p. 831.

In the present case, the prompt public acceptance and success of complainant's school demonstrates that an

146

adequate supply of customers (students and patrons) was available, thereby removing the speculative character of future business profits of a new business.

■ Defendant also cites Evergreen Amusement Corp. v. Milstead, 206 Md. 610, 112 A.2d 901 (1955) wherein a movie theatre sued a grading contractor for damages for delay in completing a parking lot. It was held in that case that the theatre; as a new enterprise, could not prove anticipated profits by showing profits of other theatres during the period of delay or profits of the same theatre at a subsequent time. Acknowledging the practical difficulty of proving with reasonable certainty the amount of anticipated profits of a new enterprise, this Court is unable to agree with the holding of *Evergreen,* which would effectively exonerate a defaulting contractor from damages suffered by a new business. If, as in the present case, the profits have been shown with reasonable certainty by actual experience, there is no reason to penalize the enterprise of the founder of a new business by denying him his remedy for losses occasioned by the default of the defendant.

Defendant also cites Dieffenbach v. McIntyre, 208 Okl. 163, 254 P.2d 346 (1952) which, coincidentally, involved the breach of an agreement to lease space for a beauty salon. The plaintiff actually removed her salon from a downtown location to the leased premises, but the possession of the entire premises was never delivered to her, and she was forced to move after two months. The lessee was not permitted to show profits made at the old, downtown, location because of difference in trade area, and was not permitted to show two months profits in the leased premises because of brevity of time.

Each particular suit for anticipated profits must be decided upon its own peculiar facts within the broad general rules laid down in prior decisions. In the present case, this Court is satisfied that the anticipated profits, and the evidence thereof, were not matters of speculation or conjecture, but rather of credible experience.

■ Defendant insists that the period (nine months) for which anticipated profits were allowed was excessive because of the following provision in the subject lease:

"* * * Should the demised premises not be completed and ready for occupancy in accordance with the plans and specifications hereinabove referred to, Lessees shall not be obligated to pay one-thirtieth (1/30) of the monthly rent for each day's delay in securing occupancy, but rent shall begin not later than August 1, 1966. Any delay in securing occupancy of the premises due to incompletion of the alterations shall not operate to change the expiration date of this lease as hereinabove provided."

It is insisted that the effect of the foregoing provision was to allow the lessor until August 1, 1966, to prepare and deliver possession of the building without penalty other than loss of rent. No authority is cited for the proposition that the provision relieving lessees from payment of rent was the sole remedy of lessees for delay in performance. It is shown that the defendant lessor never began the necessary alterations, hence the damages of complainants were not occasioned by delay in completion of alterations, but rather a total default in furnishing premises at all. If defendant had tendered possession during July while the alterations were not yet complete,

this insistence might be considered, but such did not occur and the lessees are entitled to damages for failure to receive possession on July 1, 1966 as agreed. The first assignment of error is respectfully overruled.

The second assignment of error, directed at Item "B", supra, is as follows:

"The chancellor erred in awarding damages for rent differential determined by taking the present value of the difference in the Elrod and Gentry leases over a ten year period. This was error because:

1. The value of the Elrod lease is the difference in the fair rental value and the contract rent.

2. The use of a ten year basis is contrary to the terms of the five year Gentry lease."

Defendant insists that the "fair rental value" of the first (Elrod) lease was less than the "contract value" because defendant, Elrod, said this was so. To the contrary, the evidence is unequivocal and uncontradicted that complainants were unable to obtain other suitable premises for their business except by paying $100.00 per month more rent and then by waiting until a new building could be constructed. Can it be said that under such circumstances the value of the rights of lessees under their first lease with defendant were worthless? The answer is obvious.

In Jonas v. Noel, 98 Tenn. 440, 39 S.W. 724 (1897), the defendant lessor failed to build a house for occupancy of plaintiff as agreed. It was insisted that the plaintiff's

damages were limited to the difference between the "market value" of the lease and the agreed rental. The Supreme Court said:

"Where the lessor wrongfully refuses to give possession to the lessee of the leased premises, the authorities agree that the measure of damages is the same as in a case where the vendor, without excuse, declines to convey to his vendee. In favor of the lessee thus improperly dealt with, Mr. Sedgwick says: 'The Courts are more nearly agreed in adopting the principle of complete compensation for the loss of the bargain. The ordinary rule is, to allow the difference between the rental value of the premises for the term and the rent reserved.' 3 Sedgwick on M. of Dam., Sec. 1022. * *

\*   \*   \*   \*   \*   \*

wherever the measure of damages involves the question of value, however much the market may be resorted to to determine what the value is, this resort is had, not as a conclusive test, but to aid in getting at that real value to which the plaintiff is entitled." But the purpose of the law is to give the party complaining as near complete compensation for the loss of his bargain as possible—that is, to place him in as good a position as he would have been in if he had obtained what he bargained for, so that if the thing contracted for had been dealt in in the market, a reference to the market price will ordinarily show what it will cost to indemnify the plaintiff against loss.

\*   \*   \*   \*   \*   \*

"While it is thus seen the terms 'value,' 'market value,' and 'rental value' have been used somewhat indiscriminately, yet we think there is a distinction between them, at least in cases where the matters or things contracted for have not been bought and sold in the market so as to have established a 'market value.' With regard to those subjects of contract which are freely dealt in, and which command ready buyers in the marts of trade, there is usually no harm done in referring to the market to fix the standard of value; but even in such cases this is not the final or 'conclusive test of value.' 1 Sedg., Sec. 245. But where the article or thing in question is so unusual in its character as that there is little or no demand for it, its value must be ascertained in some other way, and from such elements as are attainable (1 Sedg., Sec. 495); in such cases it is evident that to refer to the market as the sole standard of value may work serious injury to the party complainant. In the case at bar it is shown that the house which the defendant, Noel, intended to build for the use of complainants was one of unprecedented proportions for the city of Nashville, which no one save complainant was likely to make serviceable in his trade. In view of these conditions, it is apparent the Chancellor did place an unwarranted limitation on his order of reference, when he directed the Clerk and master to ascertain the difference between the contract price and the *market* value of this leasehold. Instead of this, he should have adjudged the measure of damages to be the difference between the price named in the lease and the *value,* or the *rental value,* of the term. But, conceding this error in the decree of reference, yet complainant is not entitled to a reversal, because

we find from the facts set out in the opinion of the Court of Chancery Appeals that no injury resulted to him from this limitation, as in his testimony he presented every constituent or element of value, and had the full benefit of it, both in the Chancery Court and the Court of Chancery Appeals.'' 98 Tenn., pp. 442, 443, 444, 445, 39 S.W.2d 724.

In Nash. Ry. & Lt. Co. v. Harrison, 5 Tenn.App. 22 (1927) there was a suit for negligent destruction of real estate and personalty. In assessing the value of certain personalty, this Court cited Jonas v. Noel, supra, and said:

"Of course the sermon outlines would have no market value, however much intellectual effort and scholarly research might have produced them; but when property has no market value, the recovery is not restricted to nominal damages only, but its value for the plaintiff's damage must be ascertained in some other rational way, and from such elements as are attainable. In such case the proper measure of damages is generally its actual value, or, as is sometimes said, its value to the owner, taking into account its cost and such other circumstances as may affect its value in the particular case. 8 R.C.L., 488; Southern Express Co. v. Owens, 146 Ala., 412, 41 So. 752; 119 A.S.R., 41; 8 L.R.A. (N.S.), 369; Jonas v. Noel, 98 Tenn., 440, 39 S.W., 724.'' 5 Tenn.App., p. 38

In Fuqua v. Madewell, 25 Tenn.App. 140, 153 S.W.2d 133 (1941) a lessee sued for breach of contract to rent a farm on a share-crop basis. It was shown that lessee was unable to obtain a substitute farm and was thereby forced

to sell certain livestock at a loss and was prevented from raising profitable crops. This Court allowed the damages as proven and said:

"[5] 2. The defendant's second assignment of error is that there was no competent evidence as to the plaintiff's damages; that the damages shown are speculative.

"Madewell testified that he had agreed to plant 2½ acres in tobacco, which should have produced 1,200 pounds to the acre, and tobacco sold at 18¢ a pound, therefore the proceeds of the tobacco crop would have been $540; that 65 or 70 acres were suitable for corn, on which he might have produced five barrels to the acre, and corn sold at $3 a barrel, therefore the corn crop would have been worth $975; that he could have made a profit of about $50 on raising chickens; that the pasture was worth $100; and the occupancy of the house was worth $150.

"We think the foregoing evidence was competent.

"[6] Under leases of farm lands the lessee is entitled to recover the loss of any profits he might reasonably have made from the demised premises as damages for a failure to receive possession. 32 Am.Jur. 185, sec. 194.

" 'In contrast to the situation with respect to leases of business property, it is generally, though not invariably, held under leases of farm lands that the lessee is entitled to recover the loss of any profits he might

have made from the demised land as damages for a failure to receive possession.' 104 A.L.R. 161.

\* \* \* \* \* \*

" 'In a case where there was a letting on the shares and the owner of the premises refused to let the other party into possession, the latter was allowed to recover the value of his contract, that is to say, what he could reasonably have made out of it, as his damages. To say that the plaintiff's damages should be measured by what he could have made on the farm is but another mode of saying he was entitled to the value of his bargain. It amounts to the same thing to charge that the plaintiff is entitled to be put in the same position, pecuniarily, as if the bargain had been kept.' Jones on Landlord and Tenant, 175, sec. 140.

"█ It is contended that the damages are speculative and for this reason the plaintiff is not entitled to any damages. 'The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which, he alone is responsible for making, were otherwise. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684, 691'. Nashville, C. & St. L. Railroad v. Davis, 21 Tenn.App. 663, 672, 114 S.W.2d 830, 831, 835." 25 Tenn.App., pp. 143, 144, 153 S.W.2d p. 134.

██ Thus it is seen that our Tennessee decisions are firmly committed to the policy of granting the victim of a breached lease all of the damages which he sustained as a proximate result of the breach, so long as such dam-

ages are reasonably shown and capable of reasonbly accurate ascertainment. The "value" of the rights of a lessee is therefore measured by the amount of pecuniary loss he sustains by being deprived of such rights. If the lessee is reasonably able to find substitute premises to occupy, he is obligated to minimize his damage by doing so. If other suitable premises are not available, so much more the value of the lessee's rights, and so much more his damages for being deprived of his rights.

The amount allowed under Item "B" requires some discussion and revision. The findings of the master and chancellor on Item "B" were predicated upon complainants' contractual right to occupy defendant's premises for ten years at a monthly rental of $400.00, a total rent of $48,000.00. The substitute five-year lease with five year optional extension, provides rentals of $450.00 per month for the first three months and $500.00 per month thereafter, a total ten year rental of $59,850.00. Thus the total rental to be paid under the substitute lease was $11,850 more than that required under the original, Elrod, lease.

■ In computing the lost profits, under Item "A", the master and chancellor properly recognized that the individual, stockholder, complainants were not entitled to the *gross* profits of the corporation *before* taxes, but rather the *net* profits of the corporation *after* taxes.

■ Accordingly, the $11,850 difference in total rent must be considered a reduction of profit of the corporation and diminished by the corporate tax liability. The only evidence in this record indicates a corporate tax liability of 22 percent. When reduced by 22 percent, the $11,850.00 becomes $9,243.00.

The "loss of future profit from extra rent expense" computed above to be $9,243.00 must also be adjusted to its present value. Recognized standard six percent amortization tables indicate the "present value" of $9,243.00 payable over a ten year period to be $6,802.85.

Item "B" will therefore be modified to represent, "stockholders loss of profit due to increased rental expense of corporation" and will be reduced to $6,802.85.

■ Defendant contends that the difference in rental required by the first and second leases should not be included in damages because the two properties are not identical. There is evidence that the second lease involved more desirable premises, but there is also evidence of undesirable features of the second premises which offset its advantages and render it no more desirable than the Elrod property. For example, the second location has somewhat less floor space and considerably less parking space. In any event, the finding of the master and chancellor in respect to the comparative value of the two properties is supported by competent evidence, and should not be disturbed.

■ Defendants insist that the rental differences should not be computed for the full ten years because the second, substitute, lease is for the initial term of only five years, however the second lease contains a renewal option for five years. In the absence of any showing that complainants will be able to obtain other accommodations on more advantageous terms, it must be presumed that complainants will exercise their option to extend the second lease for additional five years to a full ten year term.

Defendant cites Ramsey v. Holmes Elec. Protective Co., 85 Wis. 174, 55 N.W. 391 (1893), wherein the plaintiff had a sales agency contract for selling and servicing products of the defendant. As an incident to the contract, plaintiff had the right to occupy certain premises of defendant. When defendant breached the contract, plaintiff was held to be entitled to damages attributable to the contract term of three years, but was denied damages attributable to an optional five year extension of said contract because plaintiff had not exercised his option and bound himself to the five year extension. In *Holmes,* the unexercised option for extension related to the very contract upon which suit was brought. In the present case, the option relates to a collateral contract evidencing damages. It is true, as insisted by defendant that complainants may never exercise their option to extend the term of the substitute lease because other premises may be available at a lesser rental. It is likewise true, and much more probable, that rental charges will continue their present upward trend so that the privilege of extension will be very attractive and beneficial to complainants. At any rate, complainants have shown that the five year lease with five year renewal option was the best substitute obtainable for the breached ten year lease. This showing is a valid basis for computation of damages unless the defendant should show otherwise, and he has not done só.

With the exception indicated, the second assignment of error is respectfully overruled.

The third assignment of error is as follows:

"The chancellor erred in awarding damages for an interest payment. This was error because the payment was not caused by the defendant's breach."

The only argument advanced in support of this assignment is as follows:

"The Chancellor's award for interest must be reversed because the loan was not caused by the breach; it would have been necessary notwithstanding the breach."

It is shown that after defendant signed the lease, complainants contracted to buy $10,500.00 worth of equipment, that complainants borrowed $3,000.00 from a bank to make the down payment on said equipment and paid $45.00 interest on said loan. At six percent, this would be interest for three months. There is no evidence of payment of further interest during the entire nine months delay. Whether the loan was repaid because the money was not needed, or there was an oversight in proving later interest, it must be conceded that interest charges incurred for borrowing money for legitimate business purposes is a proper element of damages under the circumstances of this case.

The third assignment of error is respectfully overruled.

■ The fourth assignment of error is as follows:

"The chancellor erred in the award of a storage for July 1966. This was error because the Elrod lease specified the remedy for a breach in July 1966 to be exoneration of the lessee from rent."

It is shown that the equipment purchased by complainants was held in storage from July 1, 1966 until February 28, 1967 for which a charge of $25.00 per month was made. Defendant's complaint appears to be directed at that fractional part of the storage ($25.00) which was incurred between July 1, 1966 and August 1, 1966. For reasons already explained, it is not considered that the agreement to mitigate rent for delay in completion evidenced an intent that such mitigation should be the sole compensation for delay.

The fourth assignment of error is respectfully overruled.

The fifth assignment of error is as follows:

"The chancellor erred in awarding damage for advertising cost. This was error because the resultant advertising generated almost the same results as if the breach had not occurred and was thus not a loss to the complainants."

The amount of this item is trivial ($4.86). The evidence shows that twenty-eight prospective students answered the advertisement, and all but a few ultimately enrolled in the school when it started. This small expense could not be said to have been incurred uselessly and without benefit to the complainants.

Accordingly, Item "E" is disallowed, and the fifth and final assignment is sustained.

From this record, there are other bases which might be used in calculating damages to be allowed. For example,

the measure of damages for nine months delay in opening a business is not necessarily the profit or loss which would be or actually was realized during the initial and usually profitless operation of a business enterprise. The default of defendant delayed not only the beginning of the initial, low-profit phase of a new enterprise; but it also ultimately delayed the beginning of and shortened the period of the profitable, full-scale, operation. In other words, it could be well insisted and concluded that the first nine months of the business operation would be at a limited profit whenever and wherever the business was begun, and that thereafter, the remaining nine years and three months of established operation would be on a sustained and profitable basis. The delay of nine months actually shortened the period of full profit operations from nine years and three months to eight years and six months. By this reasoning, complainants could have been allowed damages based upon nine months of full-scale operating profits which are shown to be $2,000.00 per month.

The master and chancellor did not adopt this liberal view of complainants' damages; and in conformity with the rules heretofore cited, this Court has adopted and followed the findings and conclusions of the master and chancellor to the extent that they are supported by competent evidence and comport with applicable rules of law. The necessary modification of the findings of the master and chancellor produce the following assessment of damages:

Item A.
Loss of profits due to delay from
   July 1, 1966 to April 1, 1967        $ 7,170.00

Item B.
Loss of prospective profit due to increased rent expense    6,802.85
Item C.
Interest on $3,000.00 loan    45.00
Item D.
Storage of equipment from
    July 1, 1966 to February 28, 1967    200.00
Item E.
Disallowed

    Total       $14,217.85

Accordingly, an order will be entered in this Court dismissing the suit of Helen Ferrell's School of Cosmetology, Inc., and awarding judgment in favor of the complainants, Helen Ferrell and Buford L. Ferrell, and against the defendant, Clarence E. Elrod, for $14,217.85 plus interest from October 26, 1966, the date of the filing of the original bill, and all costs including costs of this appeal.

Modified and rendered.

Shriver, P.J. (M.S.), and Puryear, J., concur.