IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 27, 2001 Session

## JAMES E. MOODY, ET AL. v. WILLIAM LEA, JR.

**Direct Appeal from the Circuit Court for Dyer County**
**No. 99-105      R. Lee Moore, Jr., Judge**

_____

**No. W2000-02916-COA-R3-CV - Filed November 7, 2001**

_____

This appeal involves a dispute over an oral contract to lease farming equipment. The agreement provided that the defendant could use the plaintiff's farming equipment for an amount to be determined by a formula. The defendant began farming his land, intending to plant cotton, when the Mississippi River rose and the backwater covered his property. Because the backwater remained on the land for such a long period of time, the defendant could no longer grow cotton; he had to grow soybeans instead. Subsequently, the defendant refused to pay the plaintiff the amount the plaintiff claimed under the contract, and the plaintiff sued. The trial court held that the contract was enforceable and that the defendant's performance was not excused by the doctrine of frustration of commercial purpose. The defendant appeals the ruling of the trial court. For the reasons below, we affirm in part, reverse in part, and remand the case to the trial court to modify the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part;**
**Reversed in Part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, William Lea, Jr.

Douglas W. Wilkerson and W. Lewis Jenkins, Jr., Dyersburg, Tennessee, for the appellees, James E. Moody and Cold Creek Ag Pro, LP d/b/a Cold Creek Farms.

### OPINION

After graduating college, William Lea (Mr. Lea) began working full-time with Cold Creek Farms (Cold Creek), a Tennessee general partnership. Cold Creek is a farming operation doing business in Dyer and its surrounding counties. Mr. Lea worked for Cold Creek from February 1994 until November 1998; his duties included the management and supervision of Cold Creek's daily operations.

In the fall of 1997, Mr. Lea decided that he wanted to operate a farm on his own while maintaining his duties with Cold Creek. Mr. Lea located a farm near Cold Creek's main farming operation and obtained a sublease on the land.[1] Mr. Lea acquired the land with the intent to grow cotton.

As he was without farming equipment of his own, Mr. Lea sought to purchase or lease a tractor to farm the land. Mr. Lea told James Moody (Mr. Moody), a general partner at Cold Creek, about his plans to obtain a tractor. Mr. Moody, along with Waymon Burks (Mr. Burks), another person with interest in Cold Creek, decided to offer Mr. Lea a way to use the resources of Cold Creek. Mr. Moody and Mr. Burks made an oral offer to Mr. Lea which would allow Mr. Lea to use all of Cold Creek's equipment for the year. Under the terms of this offer, Cold Creek would have someone appraise all of its equipment. After the appraisal, Cold Creek would divide the market value of the equipment by five years.[2] The resulting figure provided an annual cost of the equipment. The parties would next determine the total acres that Cold Creek was farming and the total number of acres that Mr. Lea was farming. The sum of these totals would then be divided into the annual cost of the equipment, which would provide a per acre cost of the equipment. To arrive at Mr. Lea's equipment cost, the per acre cost of the equipment would be multiplied by the total acres Mr. Lea farmed that year.

The offer provided that the parties would arrive at the overhead cost in a similar manner. At the end of the year, the total overhead would be divided by the total number of acres that the parties farmed that year. The resulting per acre overhead cost would then be multiplied by the number of acres that Mr. Lea farmed that year. This product would represent Mr. Lea's total overhead cost. The sum of Mr. Lea's equipment cost and Mr. Lea's overhead cost would be the amount owed by Mr. Lea to Cold Creek in consideration of using its equipment.

After the representatives of Cold Creek made this offer, Mr. Lea decided to talk with his advisor before deciding whether to accept the offer. Sometime later, the parties met again. The parties went through the proposal a final time, and Mr. Lea decided to accept the offer. The oral agreement was not reduced to a written contract by either party.

The land that Mr. Lea acquired and sought to farm was located in the bottomland of the Mississippi River. Mr. Lea had plowed 50 of the land's 280 acres when the backwater of the Mississippi River came onto and covered the land. The water remained on the land for about a month. By the time the water receded, Mr. Lea decided that the land would not be suitable for growing cotton. Instead, Mr. Lea decided to grow soybeans on the land. Mr. Lea told Mr. Moody of this change in plans, and Mr. Moody agreed that it was the proper decision.

---

[1] The lessor of the land, Harris Hughes, also owned a cotton gin. In order to sublease the land, Mr. Lea had to get Cold Creek to agree to gin a certain amount of cotton with Mr. Hughes. The amount of cotton Cold Creek was to provide was dependent on the amount of cotton produced by Mr. Lea.

[2] The reason the parties divided the equipment cost by five is unclear from the record. However, both parties agree that this was the figure in the offer.

As soybeans are much less profitable than cotton, Mr. Lea became concerned about his financial situation. Mr. Lea discovered that he would have to hire a company to spray his beans because he was too busy with his responsibilities at Cold Creek to do it personally. He also had to get his beans custom harvested, as there were not enough personnel at Cold Creek to perform this function. Mr. Lea paid for these services. Mr. Lea often asked Mr. Moody to help Mr. Lea determine his financial obligations to Cold Creek. Mr. Moody would not provide this assistance and usually assured Mr. Lea that the parties would work something out in the future.

At the end of 1998, after the parties finished picking the cotton that Cold Creek managed to produce, Mr. Lea informed Mr. Moody and Mr. Burks that he was leaving Cold Creek to accept employment with a farm product distributorship. At the beginning of the next year, Mr. Lea, requiring a bank loan, sought to settle his finances. Mr. Lea contacted Cold Creek to determine how much he owed them. When the representatives of Cold Creek told Mr. Lea the amount he owed them, Mr. Lea declined to pay. Cold Creek sued Mr. Lea to enforce their agreement.

Cold Creek alleged that Mr. Lea breached an oral contract to pay rental costs associated with Mr. Lea's use of Cold Creek's equipment and overhead. Mr. Lea defended the suit asserting there was no meeting of the minds between the parties as to Mr. Lea's liability on the contract. Further, in the alternative, Mr. Lea argued that his performance was excused according to the doctrine of failure of commercial purpose.

After a bench trial, the court rendered judgment in favor of Cold Creek. The trial court determined that an enforceable oral contract existed and that Mr. Lea breached the contract by his failure to perform. The court also ruled that Mr. Lea's performance was not excused by the doctrine of frustration of commercial purpose. Pursuant to this decision, the trial court awarded Cold Creek judgment against Mr. Lea for $28,816.50.

Mr. Lea appeals the judgment in Cold Creeks favor. Mr. Lea presents the following issues for this Court's review:

I.      Whether the Court erred in finding an enforceable agreement between the parties.

II.     Whether the Court erred in failure to find Defendant's performance excused under the doctrine of frustration of commercial purpose.

III.    Whether the Court erred in denying Defendant's Motion to Alter or Amend and to Amend the Counter-Claim to conform to the evidence.

IV.     Whether the Court erred in the damage award to Plaintiffs.

To the extent these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* With respect to the trial court's legal conclusions, our review is *de novo* with no presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

Mr. Lea contends that the agreement fails for lack of certainty and therefore, is not an enforceable oral contract. Without doubt, a contract must be sufficiently definite or certain to be enforced by the courts of this jurisdiction. *Jamestowne On Signal, Inc. v. First Fed. Sav. & Loan*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990). The terms of a contract are sufficiently certain "'if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Id.* (quoting *Restatement (Second) of Contracts* § 33).

The Tennessee Supreme Court recently cited two leading treatises as authority regarding the requirement of certainty in contract terms. *Doe v. HCA Health Serv. of Tenn., Inc.*, 46 S.W.3d 191 (Tenn. 2001). The Court stated that "'[c]ertainty with respect to promises does not have to be apparent from the promise itself, so long as the promise contains a reference to some document, transaction, or other extrinsic facts from which its meaning may be made clear.'"*Id.* at 196 (quoting 1 Richard A. Lord, *Williston on Contracts*, § 4:27 at 593 (4th ed. 1990)). The Court continued stating:

> If the parties provide a practicable method for determining [the] price or compensation there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract. The same is true if they agree upon payment of a "reasonable" price or compensation. There are cases, however, in which it is clear that the parties have not expressly or implicitly agreed upon a "reasonable price," and also have not prescribed a practicable method of determination. Where this is true, the agreement is too indefinite and uncertain for enforcement.

*Id.* at 196-97 (quoting 1 Joseph M. Perillo, *Corbin on Contracts*, § 4.3, at 567-68 (Rev. ed. 1993)). When we view Mr. Lea's argument in light of the above authority, we conclude that the contract was sufficiently certain in order to have an enforceable contract between Cold Creek and Mr. Lea.

Mr. Lea argues that the formula in the oral contract was uncertain because Cold Creek failed to submit figures representing the equipment and overhead costs to Mr. Lea until after Cold Creek performed their part of the agreement. We disagree. The formula proposed by Cold Creek and agreed to by Mr. Lea was a practicable method for determining the amount of money Mr. Lea would have to pay Cold Creek under the agreement. Many of the specific costs were unknown to either party when they formed the agreement, and the formula provided a definite method to ascertain Mr. Lea's share of equipment and overhead costs.

-4-

Additionally, Mr. Burks provided Mr. Lea with past equipment costs and present estimates as an example of how the formula would work. Mr. Burks also informed Mr. Lea of the items to be included in the equipment calculations when the parties were negotiating the contract. Further, Mr. Burks illustrated how the formula would work with respect to the overhead costs. Mr. Burks provided Mr. Lea with historical overhead expenses and talked about the items that would be included in the computation of the overhead.[3] The simplicity of the formula and the examples Mr. Burks gave to Mr. Lea provided Mr. Lea with an accurate method to gauge his expenses as to equipment and overhead. The formula supplied the certainty required to make the contract enforceable. With this formula, a method exists to determine the existence of a breach and the appropriate remedy.

Mr. Lea's second issue is also without merit. The doctrine of frustration of commercial purpose is clearly inapplicable in the present case. We discussed the doctrine in ***Haun v. King***, 690 S.W.2d 869, 871 (Tenn. Ct. App. 1984), as follows:

> The doctrine of frustration of commercial purpose . . . is if the happening of an event, not foreseen by the parties to the contract and neither caused by nor under the control of either party, has destroyed or nearly destroyed either the value of performance or the object or purpose of the contract, then the parties are excused from further performance. . . . the "supervening event" must be "wholly outside the contemplation of the parties" but, if such frustrating event was reasonably foreseeable, the doctrine is not a defense. The doctrine is predicated on the premise of giving relief where the parties could not provide themselves, by the provisions of the contract, against the happening of the supervening event. 17A C.J.S., ***Contracts***, § 463(2).

***Id***. (citing ***North American Capital Corp. v. McCants***, 510 S.W.2d 901 (Tenn. 1974)).

In this case, the "event" was the flooding of the Mississippi river that caused a backwater to stand on Mr. Lea's farmland, preventing him from growing cotton. The doctrine is unavailable to Mr. Lea, however, because it is clear the event was reasonably foreseeable. At trial, Mr. Lea stated that the Mississippi River prevented Cold Creek from planting cotton on two occasions in the four years he worked for Cold Creek. The land the Mississippi River flooded on those two occasions was near the land Mr. Lea acquired. Importantly, Mr. Lea's land was even closer to the Mississippi River than the land owned and operated by Cold Creek. Thus, it is without question that the Mississippi River flood was reasonably foreseeable to Mr. Lea.

---

[3] On appeal, Mr. Lea argues that Cold Creek failed to provide him with any figures regarding overhead. At trial, Mr. Burks clearly stated that the parties determined in advance what items would be included as overhead costs and what these costs have been in the past. Further, when asked whether Mr. Burks provided Mr. Lea with the past overhead numbers, Mr. Lea replied, "I guess so." Under our standard of review, we are unable to disagree with the trial court's factual findings regarding the proof on the overhead issue. The evidence does not preponderate against a finding that Mr. Lea was aware of the past overhead costs and the items that were to be included in the formula.

Additionally, the parties to the contract were aware that soybeans might have to be grown on the land because of the Mississippi River. At trial, Mr. Lea admitted that he knew the water from the Mississippi River might prevent him from growing cotton on the land he leased from Mr. Hughes. Mr. Lea could have used this knowledge to protect himself by conditioning his performance on his ability to grow cotton, however, he failed to provide against this occurrence. Therefore, it is evident that Mr. Lea had the knowledge and ability to protect himself against the event that prevented him from growing cotton on his land. As Mr. Lea knew that he might be unable to grow cotton on the land and failed to protect himself against this possibility, the doctrine of frustration of commercial purpose will not apply to this case.

We now turn to Mr. Lea's third issue. Mr. Lea argues that the trial court erred by denying his motion to alter or amend the judgment and in denying his motion to amend the counter claim to conform to the proof. Mr. Lea based these motions on the testimony he gave during trial that indicated he incurred expenses in spraying his soybean crop and in custom gathering his soybean crop.[4] These expenses, Mr. Lea argued, should be deducted from the judgment the court awarded to Cold Creek. The trial court denied these motions, stating that the court was without a factual basis to grant Mr. Lea's motions.

We agree with the trial court. Neither the contract agreed to by the parties, nor the record presented on appeal provide a basis that would allow Mr. Lea to recover these expenses from Cold Creek. The contract under which the parties operated provided that Mr. Lea could use all of Cold Creek's equipment in Mr. Lea's farming operations. Cold Creek upheld its end of the bargain by making all of its equipment available to Mr. Lea. Mr. Lea stated as much at trial when he admitted that Cold Creek had equipment that he could use to spray and combine his soybeans.[5] Mr. Lea testified that the only reason he did not use the equipment was because "Cold Creek Farms' duties and the duties of the cotton came first." Mr. Lea, more importantly, did not testify that the equipment was unavailable for his use. Further, the parties did not agree that Cold Creek would be responsible for any additional charges that Mr. Lea might accrue or that Mr. Lea would be excused from performance if he had to pay someone else to farm his crop. Therefore, the trial court properly denied Mr. Lea's motions.

Mr. Lea's final argument is that the trial court erred in its computation of the damages awarded to Cold Creek. We review the amount of damages awarded by a trial court as a question of fact. *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998) (citing *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 594 (Tenn. 1994); *Reagan v. Wolsieffer*, 34 Tenn. App. 537, 542, 240 S.W.2d 273, 275 (1951)). Accordingly, in a bench trial, "we review the amount of damages awarded by the trial court with the presumption that it is correct, and we will alter the amount of damages only when the trial court has adopted the wrong measure of damages or when the evidence preponderates

---

[4]Mr. Lea testified that he spent $1,500 to spray his crop and spent $5,000 to have his crop custom harvested.

[5]Cold Creek was unable to use its equipment to harvest its own soybeans and had to hire a third party to harvest its soybean crop. Cold Creek did not include the costs of spraying and combining its soybeans in its action for breach of contract and could not have properly done so.

against the amount of damages awarded." **Id.** (citing Tenn. R. App. P. 13(d); ***Armstrong v. Hickman County Highway Dep't***, 743 S.W.2d 189, 195 (Tenn. Ct. App. 1987)).

Cold Creek argues that Mr. Lea failed to comply with Rule 6(a)(2) of the Court of Appeals by failing to bring to the attention of the trial court, post judgment, that the trial court miscalculated the amount of Cold Creek's damages.[6] From the record, it appears to us that Mr. Lea did fail to abide by this rule. However, applying our *de novo* scope of review it is patently obvious that the trial court simply failed to properly calculate the correct amount of damages by relying on the exhibit Mr. Burks entered into evidence.[7] We will modify the judgment accordingly, because the evidence preponderates against the trial court's award. Therefore, the judgment is modified to $27,922.30.

Accordingly, we affirm in part, reverse in part, and remand the case to the trial court in order to modify the judgment in favor of Cold Creek to $27,922.30. The costs of this appeal are taxed equally to the appellant, Mr. William M. Lea, Jr., and his surety, and to the appellee, Cold Creek Farms, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[6]Rule 6(a)(2) states that the "[w]ritten argument in regard to each issue on appeal shall contain . . . [a] statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded. Tenn. R. Ct. App. 6(a)(2).

[7]Mr. Burks presented the exhibit as his calculation of the amount Mr. Lea owed under the contract. Pursuant to the formula, Mr. Burks took the total value of the equipment, $573,944.56, and divided that figure by 5, producing a result of $114,788.91 as the cost of the equipment for the year. Mr. Burks then divided $114,788.91 by the total number of acres both parties farmed, 2488. He listed this figure as $49.33. However, the correct result is $46.14. When we multiply $46.14 by the total of acres that Mr. Lea farmed, 280, the resulting product is $12,919.20. This is the true amount of the equipment cost to Mr. Lea under the formula agreed upon by the parties. Mr. Burks presented the cost as $13,813.22, as he relied on $49.33 as the correct number. When $12,919.20 is subtracted from $13,813.22, the result is $894.02. Therefore, $894.02 should be subtracted from Cold Creek's judgment.