IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 13, 2002 Session

## KEVIN C. HANEY, ET AL. v. BRAD COPELAND

**Appeal from the Chancery Court for Knox County**
**No. 144700-3      Sharon Bell, Chancellor**

**FILED FEBRUARY 27, 2003**

**No. E2002-00845-COA-R3-CV**

———————————————

Kevin C. Haney and his wife, Marilyn Sue Melhorn ("the buyers"), purchased a retail business from Brad Copeland ("the seller")[1] for $200,000. When their business failed, the buyers sued the seller for rescission and, in the alternative, for compensatory and punitive damages, alleging fraud and breach of contract. Following a bench trial, the buyers were awarded incidental and punitive damages totaling $99,053. The buyers appeal, arguing that they were entitled to additional damages equal to the amount of the purchase price. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Michael E. Richardson, Chattanooga, Tennessee, for the appellants, Kevin C. Haney and Marilyn Sue Melhorn.

Phillip R. Crye, Jr., Clinton, Tennessee, for the appellee, Brad Copeland.

**OPINION**

I.

The facts that are material to the issues on this appeal are undisputed. For about three years, the seller operated a bakery in Knoxville under the name of "Heavenly Cheesecakes and Chocolates" ("the business"). On June 22, 1999, the buyers and the seller had their initial meeting to discuss a possible sale of the business. At the meeting, the seller provided the buyers with various documents

---

[1]Angela Copeland, the seller's wife, was initially a defendant. The action as to her was nonsuited by the buyers. She is not a party on this appeal.

pertaining to the business.[2]  It is undisputed that the furnished materials contained a number of inaccuracies regarding the profitability of the business.

At subsequent meetings, the seller provided further documentation regarding the business. Among these documents were federal and state tax returns that purported to show the business' significant profitability.  The seller admitted at trial that he provided the buyers with federal tax documents and a state sales tax document that he had forged using his own home computer.  The federal tax return purports to demonstrate that the business had total sales in 1998 of $215,742 and a profit that year of $62,331.  The state sales tax document shows sales of $185,607.  It also reflects that all state sales tax had been paid in full.

In fact, the business' sales in 1998 were substantially less than the figures reflected in the documents.  Its profits for the same year also had been significantly overstated.  On the witness stand, the seller admitted that in 1998 he paid income taxes based upon $1,751 of net income.  In addition, contrary to the information in the state sales tax document, the seller had stopped remitting sales taxes and owed the Tennessee Department of Revenue about $35,000.  One reason the seller offered for providing forged documentation to the buyers was the fact that the genuine documents were in Texas and unavailable.

In August, 1999, acting upon the seller's misinformation, the buyers purchased the business for $200,000.  The buyers raised the necessary funds by mortgaging their home which previously had been unencumbered.  Among the items sold to the buyers were recipes, equipment and existing contracts to provide pastries for upcoming events.  The seller was also to provide the buyers with necessary training in the production of the baked goods.  The buyers renamed the business "Desserts Devine."

Within two months of the purchase of the business, the buyers realized that their revenues were not as they had expected.  After ten weeks of running the business, the buyers ceased all operations.  They claim that they lost money over those ten weeks, but kept few records to substantiate this claim.  The buyers sold some of the equipment that had been purchased from the seller, donated some to a homeless shelter, and simply abandoned the majority when they vacated their leased space.

As previously mentioned, the trial record is replete with evidence about the differences between the actual earning capacity of the business and the earnings picture depicted by the seller. However, there is no direct evidence regarding the actual value of the business at the time of the sale. Likewise, the buyers presented no evidence of what the business would have been worth had the seller's misrepresentations been true.

---

[2]Although there is some dispute as to which documents were provided at the initial meeting, this dispute is not material to the issues raised on this appeal.

II.

The buyers brought the instant action based upon contract and tort theories. Primarily, the buyers sought rescission. In the alternative, they asked for money damages equaling the full purchase price paid for the business plus incidental damages and punitive damages.

The court below refused to grant rescission, holding that such relief was not appropriate because, in the trial court's judgment, the parties could not be placed in their former status. The court did find that the seller had breached the contract and committed fraud upon the buyers. However, it only awarded incidental damages in the amount of $49,053 representing compensation for closing costs, interest accrued on their mortgage, attorney's fees, and accounting fees, with an offset for equipment the buyers sold when they closed the business. The court refused to award the buyers the $200,000 expended by them in purchasing the business, stating "I do not have...what I believe to be the basis for a judgment as concerns the two hundred thousand dollar purchase price." Applying a benefit of the bargain standard, the court below found that the evidence did not support an award of $200,000, the full purchase price, as damages attributable to the seller's breach and tortious behavior. However, the trial court did assess $50,000 in punitive damages against the seller, for a total award of $99,053. On this appeal, the buyers challenge the correctness and adequacy of the trial court's award.

III.

Review of a trial court's damage award presents a question of fact. *Moody v. Lea*, 83 S.W.3d 745, 751 (Tenn. Ct. App. 2001). In *Moody*, we opined as follows:

> Accordingly, in a bench trial, "we review the amount of damages awarded by the trial court with the presumption that it is correct, and we will alter the amount of damages only when the trial court has adopted the wrong measure of damages or when the evidence preponderates against the amount of damages awarded."

*Id.* (quoting *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998)) (additional citations omitted).

IV.

A.

As previously stated, the buyers appeal only the amount of damages awarded by the trial court. They contend "that the only true measure of damages which would fully compensate them for the fraudulent conduct of [the seller] would be recovery of the [$200,000] purchase price, in addition to the incidental damages and punitive damages which were appropriately awarded by [the trial court]." Stated differently, the buyers argue, "[g]enerally, the plaintiff is entitled to recover for

all damages suffered by them as a natural or proximate consequence of the tort committed by the defendant." They point out that, but for the seller's deceit, they would not have borrowed $200,000 against their home. The buyers would have this court hold that the seller's fraud regarding the business entitles them to recovery of the full purchase price paid for the business.

## B.

The seller contends that the trial court's assessment of damages was correct and that in a fraud case, the full purchase price is not an appropriate measure of damages. He asserts that, under the benefit of the bargain rule, compensatory damages are limited to "the difference between the actual value of the assets received at the time of the contract and the value those assets would have had if the [seller's] representations had been true." The seller argues that since the trial court found that the buyers failed to prove this element of their damages, the trial court correctly refused to include the purchase price of the business in the compensatory damages award.

## V.

The only issue before us involves whether the trial court erred in its refusal to award the purchase price as a compensatory damage for the seller's deceit. The proper measure of damages in such a case was discussed by us in the case of *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228 (Tenn. Ct. App. 1976):

> In an action for damages caused by a fraudulent misrepresentation, the proper measure of the plaintiffs' general damages is the benefit of the bargain rule. This measure of damages allows the plaintiff to recover the difference between the actual value of the property he received at the time of the making of the contract and the value that the property would have possessed if [seller]'s representations had been true. The application of this measure of damages compels the [seller] to make good on the false representations. The measure of damages and the fixing of the value of the property are to be determined as of the time of the transaction.

*Id.* at 233 (emphasis in original removed) (citations omitted).

## VI.

In order to successfully pursue their claim for the return of the $200,000 purchase price, the buyers were required to prove a $200,000 disparity between the value of the business at the time of the purchase and what the value would have been had the seller's fraudulent statements been true. Neither the buyers' brief, nor our research, reveals any authority for the type of *ipso facto* award of the full purchase price as argued for in this case.

-4-

Applying the appropriate standard utilized by the court below, as a factual matter, the evidence does not preponderate against the trial court's finding that the buyers did not prove a $200,000 difference between actual value and the value of the business had the seller's statements been true. The evidence presented by the buyers at trial emphasized the issue of intentional fraud. The trial court determined that the buyers established intentional fraud. However, the buyers put forth no direct evidence at all that would tend to show either the value of the assets received at the time of the transaction or what the business would have been worth had the seller's statements been true. Under *Haynes*, the court below correctly concluded that the buyers did not provide sufficient evidence to support the additional damages award they seek. Therefore, we hold the trial court used the appropriate measure of damages, and the evidence does not preponderate against the trial court's determination that the buyers failed to prove their entitlement to the return of the purchase money.

VII.

The judgment of the trial court is affirmed. This case is remanded to the trial court for enforcement of the trial court's judgment and for collection of costs assessed there, all pursuant to applicable law. Costs on appeal are taxed to the appellants, Kevin C. Haney and Marilyn Sue Melhorn.

_____
CHARLES D. SUSANO, JR., JUDGE